(No. 15093.—Judgment affirmed.)

W. E. HADLEY, Plaintiff in Error, *vs.* THE UNION TRUST AND SAVINGS BANK, Defendant in Error.

*Opinion filed April 18, 1923.*

1. APPEALS AND ERRORS—*opinion of Appellate Court may be examined in Supreme Court.* The opinion of the Appellate Court is a part of the files of the case, and while error cannot be assigned upon it, it may be examined to determine whether the court predicated its judgment solely upon an erroneous conception of the law.

2. SAME—*judgment of Appellate Court reversing trial court on finding of facts is binding on Supreme Court.* In an action at law the Appellate Court may determine the facts from its own consideration of the evidence and render judgment accordingly, and if it reverses a judgment as the result of a different finding of facts from that of the trial court its judgment must recite the ultimate facts found, and such recital is conclusive upon the Supreme Court, the only question open for review being whether the Appellate Court erred in its application of the law to the facts.

3. SAME—*Appellate Court's finding upon mixed question of law and fact is final.* The finding of the Appellate Court of a question of ultimate fact, derived from a consideration of evidentiary facts in a suit at law and requiring the application of principles of law to the consideration of the evidence, is a finding upon a mixed question of law and fact which is final, and the Supreme Court can not consider any assignments of error questioning the Appellate Court's determination of such question.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. M. R. SULLIVAN, Judge, presiding.

AUGUST BARTHEL, JAMES A. FARMER, and LOUIS KLINGEL, for plaintiff in error.

P. K. JOHNSON, and D. D. CURRIE, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

In an action of assumpsit on the common counts for services as an attorney and for costs advanced, W. E. Hadley recovered a judgment in the city court of East St. Louis against the Union Trust and Savings Bank for $2510. Upon appeal by the defendant the Appellate Court for the Fourth District reversed this judgment, and, making a finding of facts, rendered judgment against the defendant for $10, costs advanced and admitted to be due the plaintiff. On the petition of the plaintiff a writ of *certiorari* was issued, and the record has been returned to this court.

The question involved is wholly one of fact, whether the services were rendered under a contract for the employment by the bank of plaintiff in error and W. C. Connett, jointly, for the sum of $500, or under a separate contract to pay the plaintiff in error for his services their reasonable value.

Propositions of law offered to the trial court by the defendant in error were all held in its favor but the findings of fact were against it. These propositions of fact were submitted to the court and answered as indicated:

1. "Did the defendant as one party, and the plaintiff and W. C. Connett as the other parties, agree that plaintiff and W. C. Connett should represent defendant as solicitors in defendant's foreclosure suit against John C. Hall *et al.* under an arrangement that plaintiff and Connett were to receive $500 as solicitor's fee if the defendant had to acquire the property. foreclosed, but to receive whatever amount of solicitor's fees was allowed in the foreclosure proceedings if the mortgagor redeemed from the foreclosure sale?"

Answer by the court: "Yes."

2. "If the answer to the above interrogatory is affirmative, was the agreement therein mentioned ever modified or substituted by any further agreement between plaintiff and defendant?"

Answer by the court: "Yes."

3. "If the answer to the above interrogatory is affirmative, did the agreement in modification of substitution of the first agreement provide that the plaintiff was not to prove up solicitor's fee in the foreclosure suit, and that he was to be paid by the defendant a reasonable fee for his services in the foreclosure suit?"

Answer by the court: "Yes."

4. "Has the plaintiff, by competent evidence in the record, proven by a preponderance of the evidence that there was a subsequent contract with relation to attorney fees mentioned in the record, and if so, did Paul Schlafly, at the time such subsequent contract was supposed to have been made, have legal authority to represent and bind the defendant bank in such subsequent contract?"

Answer by the court: "Yes."

The Appellate Court made a finding of facts as follows: "The court finds that the contract under which appellee rendered the services sued for was a contract by which appellant agreed to pay appellee and W. C. Connett $500 for their services in a certain foreclosure suit, but if the court should allow any additional amount for attorneys' fees as costs and appellant collected it, then said Connett and appellee should have the amount so collected. No such fee was allowed or collected."

The undisputed facts are, that the defendant in error brought suit in the city court of East St. Louis for the foreclosure of a mortgage and obtained a decree, which was reversed by the Appellate Court for the Fourth District for the reason that a solicitor's fee for $3000 had been included in the decree in favor of the complainant's solicitor, who was one of complainant's directors, and no resolution of the corporation to pay for his services had been adopted. Thereupon the bank decided that its former attorney should have no more to do with the case, and through August Schlafly, its president, employed the plaintiff in error, to-

308—12

gether with W. C. Connett, who had recently been appointed general counsel of the bank, to take charge of and conduct the case for a fee of $500 and any additional amount which the court might allow and the bank should collect. The cause was re-instated in the city court, evidence was taken before the master, a motion was made by one of the defendants for leave to amend the answer to set up the defense of usury, which was denied by the court, and the cause proceeded to a decree for the full amount of the complainant's claim, but no effort was made to have a solicitor's fee taxed in favor of the complainant. There was an appeal to the Appellate Court, which affirmed the decree, and a petition for a writ of *certiorari* was denied. The litigation being ended, the plaintiff in error presented a bill to the defendant in error for $2500 solicitor's fees and $10 costs advanced in the Appellate Court. The defendant in error refused to pay it, insisting that it was liable only for the $500 agreed to be paid the plaintiff in error and Connett, since no additional amount had been allowed by the court or collected by the defendant in error.

It is claimed by the plaintiff in error that after the taking of evidence before the master the defendant introduced a contract under which the defendant in error had become the purchaser of the $50,000 note, secured by the mortgage, for $30,000, and had agreed to accept in payment $35,000 if paid within a certain fixed time, $40,000 if paid at a certain other later date, $45,000 if paid at a date still later, and if not paid until a certain stated time, would require payment in full. It was claimed that in view of this contract the indebtedness secured by the mortgage was affected with usury, and it was to set up this defense that it was desired to amend the answer.

The plaintiff in error testified that he sent for Paul Schlafly, who was the vice-president of the bank and the son of August Schlafly, the president, and told him that the case had been to the Appellate Court once and was go-

ing again,—that the defendants would take it up; that when the plaintiff in error went into the case the bank said it would pay him and Connett a $500 fee, and the plaintiff in error had assumed that Connett was chief counsel and would do the work and the plaintiff in error would sort of trail around with him and advise him, but had no idea that he was going to be called upon to do all the work and assume all the responsibility in the case. He told Schlafly that he was not going to assume all the responsibility and do all the work even if he got the whole $500; that he thought it was dangerous to ask the court to allow a solicitor's fee; that the court had previously allowed a solicitor's fee of $3500 and the decree was reversed because the solicitor was a director of the bank, and as far as the plaintiff in error knew he was still a director, and the plaintiff in error was his partner, and was doubtful whether or not the Appellate Court, under these conditions, would sustain a fee allowed in this foreclosure suit under the amended bill. He said he was not disturbed about getting a decree for the $50,000 in the state of the pleadings, but he thought that if a solicitor's fee were allowed there might be danger that the decree would be reversed and the cause sent back, and an amendment might be made to the answer. The plaintiff in error testified that he said to Paul Schlafly that "if there is a reversal in this case they will ask to file amended pleadings. I am willing to go ahead on this case on one condition, and that is, if the bank would pay me a reasonable fee for the services I render. Mr. Connett isn't doing anything, and I will withdraw from the case before I will go ahead." He testified that Schlafly said that that was all right; that whatever the plaintiff in error was worth the bank would pay, and he should go ahead.

Paul Schlafly testified that at the time in question he was the vice-president of defendant in error; that he had no connection with the employment of Connett and Hadley in the foreclosure suit after the first appeal; that dur-

ing the pendency of the suit he was asked by his father, who was the president, to see Judge Hadley and see what progress had been made, and he did call on him to ask him about the case and he reported to his father such reports as Hadley made to him; that he did not have the conversation with Hadley with reference to fees which the latter testified to, and that Hadley at no time said to him that he wanted any different arrangement with the bank from the original arrangement in regard to the fee; that Hadley did not tell him under the circumstances it was not proper for Hadley to prove up solicitor's fees in the foreclosure suit, and that he never talked to Hadley about the matter of lawyer's fees but first learned of the latter's claim when he presented a bill and asked that his account be credited. This was the contested question in the case, the trial court found it in favor of the plaintiff, the Appellate Court in favor of the defendant, and we are bound by the finding of the Appellate Court.

It is argued that the finding of the Appellate Court results from erroneous conclusions of law reached by the Appellate Court as shown by its opinion: First, that the vice-president of the bank, Paul Schlafly, had no authority to make a contract for the bank for the payment of attorney fees; second, that the contract of employment between attorney and client is such that it cannot thereafter be changed during the pendency of the litigation. These two propositions are argued in the briefs of counsel for the respective parties but they are not presented for our consideration on this record. They are discussed in the opinion of the Appellate Court, but only in connection with the determination of the question of fact whether a contract in relation to attorney fees subsequent to the original contract was made by the defendant in error. This question of fact is fully argued on each side as if it were open to consideration in this court. The opinion of the Appellate Court is a part of the files of the case, and while error cannot be assigned

upon it, it may be examined to determine whether the court predicated its judgment solely upon an erroneous conception of the law. (*Foster* v. *Graf*, 287 Ill. 559.) The Appellate Court has power, in reviewing judgments of trial courts, to determine the facts from its own consideration of the evidence and render judgment accordingly. If it reverses a judgment as a result of a different finding of facts from that of the trial court its judgment must recite the ultimate facts found, and such recital is conclusive upon this court. The only question open for review in such case is whether the Appellate Court erred in its application of the law to the facts. The ultimate question of fact in this case, and the only question in dispute, was whether the services were rendered under the original contract or a subsequent contract,—that is, whether any subsequent contract was made. The decision of this question involved a consideration of the contradictory testimony of the plaintiff in error and Paul Schlafly as to the conversation by which the plaintiff in error claims the new contract was made, and the sufficiency of the evidence to establish Schlafly's authority to make the alleged subsequent contract or to establish the estoppel alleged by the plaintiff in error against the defendant in error to deny such authority, as well as the legal questions of the inherent authority, if any, of the vice-president, and the effect, if any, of the relation of attorney and client. The finding of the Appellate Court of a question of ultimate fact derived from a consideration of evidentiary facts, though requiring the application of principles of law to the consideration of the evidence, is a finding upon a mixed question of law and fact, which is final. (*Navratel* v. *Curtis Door and Sash Co.* 290 Ill. 526.) We are prohibited by law from allowing any assignments of error calling in question the determination of such a question of fact by the Appellate Court.

The judgment will be affirmed. *Judgment affirmed.*